UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:16 CR 153-PPS |
| MONIQUE BOWLING, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant, Monique Bowling, filed a very short 2-page motion for a new trial containing scant argument and no legal citations whatsoever. [DE 144.] Bowling's motion largely argues that the testimony of Bobby Peak, a convicted felon, was not credible, and the testimony of Kim Blackmon, an employee of the City of Gary, was dubious and harmful to Bowling. Because I find that the evidence against Bowling was sufficient, a new trial is not warranted.

A three-day jury trial was held before me in January 2019. Bowling was found guilty on Count 1 of the indictment – theft from a local government receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A) and 2. The government presented evidence at trial that Bowling, who worked as a network administrator for the City of Gary's IT Department, ordered more than one thousand Apple iPads and other computer equipment from vendors for Gary's departments and agencies, but then sold the computers and kept the money for personal gain.

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court

may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quotation omitted). In other words, ordering a new trial under Rule 33 is "reserved for only the most extreme cases." *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (quoting *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998)). I would only set aside the verdict and remand for a new trial if "no rational jury could have rendered" the verdict. *Smith v. Wilson*, 705 F.3d 674, 677-78 (7th Cir. 2013).

Bowling argues that a new trial is necessary due to the testimony of two trial witnesses. First, she criticizes the testimony of Bobby Peak. Peak was arrested on March 10, 2015. When the authorities searched his car, they found four MacBook Pro computers and an iPad box in the trunk. This discovery ultimately led to the uncovering of Bowling's scheme. Peak testified at trial that he purchased from Bowling approximately one hundred iPads which belonged to the City of Gary. Bowling now argues that "[t]his evidence was extremely damaging to Ms. Bowling because no other witness had purchased more than two iPads from her. Mr. Peak's testimony is dubious in that he had no records of payments to Ms. Bowling and did not remember the dates of any transactions." [DE 144 at 1.]

On a motion for a new trial, I must examine the evidence in the light most favorable to the nonmoving party and leave "issues of credibility and weight of

2

evidence to the jury." *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016) (internal quotations marks and citation omitted). "It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury, not the trial judge . . [t]he exception is an extremely narrow one, however, and can be invoked only where the testimony contradicts indisputable physical facts or laws." *United States v. Kuzniar*, 881 F.2d 466, 470-71 (7th Cir. 1989) (citations omitted).

Bowling has not satisfied this extremely narrow burden of showing that Peak's testimony regarding buying iPads and MacBook Pro computers contradicted indisputable physical facts or laws. It was up to the jury to determine his credibility regarding the testimony about the iPads and computer equipment Peak purchased from Bowling.

Moreover, Peak's testimony about purchasing the computers from Bowling is corroborated by other evidence introduced at trial including text messages between Bowling and Peak confirming Bowling provided at least 100 iPads to him [Trial Ex. 50], an iPad box found in the trunk of Peak's car with a purchase order number showing that Bowling had ordered it for the City of Gary [Trial Exs. 54, 13], and proof that the four MacBook Pro computers found in Peak's vehicle were ordered by Bowling on the City of Gary's account with Best Buy [Trial Exs. 1-4, 6].

Bowling also criticizes Peak's testimony claiming "[h]e had incentive to lie about the circumstances under which he acquired the laptops to reduce the unrelated charges he was facing." [DE 144 at 2.] When the authorities pulled over Peak's car and

3

discovered the four MacBook Pro computers in his trunk, they also found ammunition in Peak's car and controlled substances. Defense counsel had the opportunity, and indeed did, question Peak during trial about these unrelated charges. Defense counsel questioned Peak on cross, who admitted that he pleaded guilty to being a felon in possession of the ammunition (for which he received probation), and that the state dropped the charges regarding the controlled substances found in the car. Thus, the jury had this information when evaluating Peak's testimony. During a side bar, AUSA Gary Bell proffered that he did not contact Peak for a year after his arrest, and had no control over the state charges. Finally, the jury was admonished in a jury instruction that "[y]ou have heard testimony from Bobby Peak that suggests that he may have been involved in the crime the defendant is charged with committing. You may give this witness' testimony whatever weight you believe is appropriate, keeping in mind that you must consider that testimony with caution and great care." [DE 147 at 12, Jury Instruction No. 11.]

Therefore, once again, the jury had the full array of information in front of it when evaluating Peak's testimony, including the fact that he was a convicted felon and that he received probation for the unrelated state charges. The jury was in the best position to evaluate his testimony, and I will not second guess their conclusion.

Bowling also argues that the testimony of Kim Blackmon "was dubious and harmful" to her. [DE 144 at 2.] Blackmon worked in the vehicle maintenance department for the City of Gary, and Bowling asked Blackmon to sign for her packages

when they arrived.  Blackmon admitted that she received numerous packages for Bowling, some of which contained iPads which Bowling later sold.  Bowling contends that: "Ms. Blackmon testified concerning the number of packages she received and that there were always yellow delivery trucks coming to her location.  There was no evidence presented that either FedEx or any other delivery service used by C.D.W. or other entities from whom Apple products were purchased used yellow delivery trucks." [DE 144 at 2.] I fail to see the significance of whether Blackmon's testimony about yellow delivery trucks was accurate or not as to the color of the trucks.  At least a dozen text messages between Bowling and Blackmon confirm that Bowing asked Blackmon to sign for packages and to then notify Bowling when the packages arrived. [Trial Ex. 51.] The color of delivery trucks is irrelevant to the substance of Blackmon's testimony.

In this case, reasonable jurors could have concluded that Peak and Blackmon were credible.  *United States v. Jarrett*, 447 F.3d 520, 530 (7th Cir. 2006) ("a trial judge does not sit as a 13th juror to evaluate the credibility of a witness . . . .").  Bowling has not set forth any arguments that entitle her to a new trial, and I find that the evidence at trial was sufficient to adjudge Bowling guilty.  Therefore, the Motion for New Trial [DE 144] is DENIED.

**SO ORDERED.**

ENTERED: March 4, 2019.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

5