UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  NO. 2:16-CR-153-PPS |
| | ) |
| MONIQUE S. BOWLING, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before me on Monique Bowling's pro se "Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [DE 188] and the Supplemental Brief in Support of Bowling's Request for Compassionate Release [DE 196] filed after a defense attorney filed her appearance on behalf of Bowling. Bowling is a 48 year old female who suffers from multiple health issues including an iron deficiency, Type 2 diabetes, and high blood pressure. She is currently incarcerated at FCI Greenville located in Greenville, Illinois, which has a low rate of infection for COVID-19.

In accordance with my order dated May 5, 2020, Federal Defender Roxanne Johnson filed her appearance on behalf of Bowling and filed a supplemental brief in support of her motion for compassionate release. The Government filed a response in opposition on August 6, 2020, arguing that while Bowling may suffer from medical conditions that qualify as "extraordinary and compelling," the Section 3553(a) factors weigh against release. [DE 201.] Bowling, through counsel, filed a reply on August 13,

2020. [DE 205.] For the reasons set forth below, the motion for compassionate release is denied.

## Background

Let's first review the procedural background of this case. A grand jury indicted Bowling on six fraud counts in two unrelated schemes – one involving a scheme to defraud the City of Gary and the other involving a scheme to defraud a pension fund. The two schemes were severed and two trials were set. Bowling first went to trial on one count of theft from a local government that received federal funds, in violation of 18 U.S.C. § 666, whereupon she was found guilty. After the trial, Bowling agreed to reimburse the victim of a separate pension fraud scheme [DE 149] and the government dismissed the remaining counts with prejudice.

The Government presented overwhelming evidence at trial that Bowling, who worked as a network administrator for the City of Gary's IT Department, ordered more than one thousand Apple iPads and other computer equipment from vendors for Gary's departments and agencies, but then sold the computers and kept the money for personal gain. This all happened at a time when the City of Gary was already experiencing severe financial difficulty. Bowling went through great trouble to conceal this scheme for as long as she could.

But even after she was caught, Bowling refused to accept responsibility. Instead, a few weeks before the trial was scheduled to begin, Bowling's counsel moved to continue the trial date because he could not communicate with Bowling because she

2

claimed to be unable to speak.  Following mental competency proceedings and a psychological evaluation, a forensic psychologist determined that Bowling was malingering in an effort to evade criminal prosecution.  This forensic psychologist testified at Bowling's competency hearing, and Bowling was determined competent to stand trial.  Nevertheless, Bowling remained mute through the trial and all other proceedings in front of me.

During sentencing, I found a two-level sentencing enhancement for obstruction of justice was appropriate based on Bowling's malingering, or having faked a mental illness, which caused the trial to be delayed for a year.  Bowling's total offense level was 26, and her criminal history category was I, which resulted in a Guideline range of 63 to 78 months.  I sentenced Bowling to 63 months imprisonment, which was the low end of her advisory range, and ordered her to pay restitution totaling $1,386,430.28.

In announcing her sentence, I told Bowling that I viewed this as a very serious offense:

> This is a gigantic fraud.  It's a fraud of large proportions.  We are talking about well over a million dollars that is stolen here, and it's stolen from a municipality that is under great financial burden, just a cratering tax base, difficult school system because of a lack of funding, city services under great pressure, and you know that better than probably anybody here, you worked there for almost 25 years, the significant burden that Gary and other urban environments are suffering under.  And yet, you have victimized them to the extent of $1.3 million, which is a lot of money to anybody, and it is certainly a lot of money to the City of Gary and the good people who live there and work there and try to make it successful.

[Sent Tr., DE 184 at 65.]  I found Bowling's conduct "sinister" and "scheming behavior"

which all evidenced "a substantial degree of planning and a substantial degree of intentional conduct that I think substantially aggravates the offense." [*Id.* at 65-66.] On the other hand, I recognized that Bowling had lived an exemplary life before 2013, so that weighed in favor of a sentence at the low end of the Guideline range. [*Id.* at 66-67.] I concluded that Bowling's sentence was "significant," but that it "is called for given the . . . nature of the offense and how you attempted to cover it up." [*Id.* at 67.]

Bowling appealed her conviction raising various issues including whether it was clear error for me to have found that she was faking her muteness in an effort to throw a wrench into the gears of justice. The Seventh Circuit affirmed the judgment in all respects, finding "[t]he district court's factual finding that Bowling was malingering was not clearly erroneous and is more than a plausible finding in light of the record." *United States v. Bowling*, 952 F.3d 861, 870 (7th Cir. 2020).

In support of the present motion, Bowling claims there are extraordinary and compelling reasons for her release because she has serious medical and mental health conditions that make it impossible for her to safely function within the BOP. Additionally, in the supplemental brief, her attorney argues "it is a foregone conclusion that for Ms. Bowling any exposure to COVID-19 would likely be life-threatening." [DE 196 at 11.]

## Discussion

The instant request is for compassionate release under the First Step Act. Bowling bears the burden of showing she is entitled to compassionate release. *See*

4

*United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Bowling has fully exhausted her administrative remedies, and so the matter is now properly before me. *See* 18 U.S.C. § 3582(c)(1)(A). The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weigh against release in this case.

## I.      Section 3553(a) Factors

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable

5

category of offense committed. 18 U.S.C. § 3553(a). The Government argues that the section 3553(a) factors weigh against a reduction in sentence in Bowling's case, and I agree.

The serious and continuing nature of Bowling's scheme to defraud the financially-struggling City of Gary out of over a million dollars worth of computer equipment does not weigh in favor of her early release. Nor does her flouting the judicial system, exaggerating her symptoms, malingering, and feigning muteness which all extended the judicial proceedings unnecessarily and not only cost time, but also valuable judicial resources. While I certainly agree with Bowling's argument that she "should not be penalized for taking her case to trial" [DE 205 at 6], I do think it is appropriate to consider the history and characteristics of Bowling (as the statute requires), and that includes the consideration that she was found to be malingering during the prosecution of her case.

Bowling has served only about 19 months of her sentence, and is scheduled to be released in about 32 months. [DE 201 at 7.] Therefore, she has served about 37 percent of her in-custody sentence. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Dennis Jones*, No. 2:18-CR-137, 2020 WL 3969912, at *3 (N.D. Ind. July 14, 2020) (finding one of the factors that weighed most strongly against release was the fact the defendant had only served 13 months of his 70 month sentence). Moreover, according to the government, Bowling "has not returned one penny" yet. [DE 201 at 6.]

6

Consequently, the 3553(a) factors strongly weigh against a reduction in Bowling's sentence.

## II.   Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13.  This would allow me to reduce Bowling's sentence if I determined extraordinary and compelling reasons warrant the reduction, Bowling is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement.  U.S.S.G. § 1B1.13.  Relevant to this case, the application note states a court "may reduce a term of imprisonment" if a defendant suffers from a "serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 & n.1(a)(ii)(I).

Bowling's medical issues, including her Type-2 diabetes, anemia, high blood pressure, back pain, and depression, do not qualify as extraordinary or compelling reasons to reduce her sentence.  Although Bowling claims she is in need of specialized care [DE 188 at 1], the medical documents indicate that her situation is not deteriorating, and that she is receiving care from the BOP.  She received a medical exam after her transfer to FCI Greenville and the medical records confirm she receives

7

multiple medications for her issues. [DE 203 at 44, 38-41, 62-67, 98-101.] Specifically, regarding her diabetes, Bowling receives two daily insulin shots and her glucose level is tested each time. [*Id*. at 48-59, 72-78, 158-65, 176-86.] Additionally, in May 2020, Dr. Ahmed evaluated Bowling due to her request for reduction in sentence, and he determined her current condition and prognosis were good and that Bowling's medical condition did not diminish her ability to function in the prison plus she did not have an incurable disease. [DE 203 at 116-17.] The medical records also show that Bowling began receiving treatment at an outside facility for her iron deficiency. [DE 203 at 120-21, 139, 197.] As Bowling points out in her reply, she was finally sent to an outside facility for a prescribed iron transfusion on July 16, 2020, which was over four months late. [DE 205 at 5.] Although her counsel argues it "was sheer luck that Ms. Bowling did not suffer negative effects from the BOP's failure to act on her doctor's order for iron transfusions," thankfully, there were no adverse consequences. [DE 205 at 5.] Nothing is easy in the era of COVID-19, and I'm not surprised it is difficult to secure transportation for an inmate and transfer her to an outside facility for a medical treatment.

     I am sympathetic to Bowling's medical issues, and while the BOP cannot deliver perfect care right now (or ever, probably), Bowling seems to be getting overall adequate and appropriate care for her health issues. There is nothing about her diabetes, anemia, high blood pressure, hyperlipidemia, back pain, and depression in general which would constitute an extraordinary or compelling reason to reduce Bowling's sentence.

8

*See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and should not limit her self-care ability."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event."). Importantly, Bowling has not shown that her medical conditions substantially diminish her ability to provide self-care while she is incarcerated.

      The Government seems to concede that because Bowling has a health condition on the CDC's list of medical conditions that cause heightened risk, she therefore presents an extraordinary and compelling reason to allow for compassionate release in light of the COVID-19 epidemic [DE 201 at 6]. But I think that overstates the case a bit. Indeed, there are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). Many courts have found extraordinary and compelling reasons "supporting release on the basis of a *combination* of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *United States v. White*, 2:17-CR-00198-4, 2020 WL 3244122, at *3 (S.D.W. Va. June 12, 2020) (emphasis added) (see cases cited therein). Plus I will add that I have also considered advanced age a contributing factor.

9

Even considering Bowling's health issues in the midst of the COVID-19 pandemic, I still do not think she has met the extraordinary and compelling standard in this case. According to the Centers for Disease Control and Prevention (CDC), people of any age with Type 2 Diabetes mellitis "are at an increased risk of severe illness from COVID-19" and it recommends that people with diabetes take actions including "continue taking [] diabetes pills and insulin as usual" and continue to test their blood sugar and track the results. Https://www.cdc/gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed August 14, 2020). In this case, Bowling does seem to be getting adequate care for her diabetes as she receives two daily insulin shots and her glucose level is tested each time.

Additionally, hypertension, or high blood pressure, has been recognized by the CDC as a condition that might increase the risk for severe illness from COVID-19. But as the Third Circuit has explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Melgarejo*, No. 12-cr-

10

20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

      While I am certainly sympathetic with Bowling's situation and her concern about potentially becoming infected with COVID-19 from someone else at the facility, aside from her speculation that the rate could increase at FCI Greenville, Bowling has not demonstrated that her risk there is significantly higher than if she were to be released, or that the facility is unequipped to provide appropriate medical treatment if she were to become sick. According to the Government at the time it filed its response, at FCI Greenville, only 1 inmate and 3 staff members had confirmed cases of COVID-19 during the pandemic, and they all recovered. [DE 201 at 1.] However, the numbers are constantly changing with COVID-19. According to Bowling in her reply, since the filing of the Government's response on August 6, 2020, there are now 9 total affected staff members (6 staff members who are currently positive and 3 staff members who have recovered). [DE 205 at 2.] Counsel for the defense has made a persuasive point in showing that infections within jails can change rapidly. Indeed, I agree with her point that prisons can be like "powder kegs for infection" that have allowed "the COVID-19

11

virus to spread with uncommon and frightening speed." *United States v. Rountree*, 1:12-CR-0308, 2020 WL 2610923, at *5 (N.D.N.Y. May 18, 2020) (quotation omitted). But I can only act on what I have before me, not on what may occur some time in the future. The bottom line is that, fortunately, FCI Greenville (at this time) has a very low rate of infection compared to many other prisons across the United States, and fear of a severe outbreak there is only speculation. While any number of COVID-19 cases within the prison context is great cause for concern, here, a generalized assertion that any prison facility along with Bowling's health issues necessitates release, is simply not compelling enough to justify the extraordinary remedy of a reduced sentence.

In sum, issues surrounding the COVID-19 pandemic are undoubtedly troubling, especially to those Americans who are incarcerated. Matters change rapidly and new developments occur nearly every day. At this point, based upon all the facts before me, I do not think that Bowling's sentence should be reduced. If factual developments warrant a reconsideration, Bowling is free to exhaust her administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Bowling's pro se "Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [DE 188] and the Supplemental Brief in Support of Bowling's Request for Compassionate Release [DE 196], are DENIED. Bowling has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons

warrant such a reduction under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: August 21, 2020.

                                       /s/   Philip P. Simon  
                                      PHILIP P. SIMON, JUDGE  
                                      UNITED STATES DISTRICT COURT